WOOD BALMFORTH LLC
Mary Anne Q. Wood (#3539)
Jared M. Asbury (#12435)
Douglas C. Smith (#10805)
60 East South Temple Street, Suite 500
Salt Lake City, Utah 84111
Telephone: (801) 366-6060
Facsimile: (801) 366-6061
mawood@woodbalmforth.com
jmasbury@woodbalmforth.com
dsmith@woodbalmforth.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALLEGIS INVESTMENT SERVICES, LLC; ALLEGIS INVESTMENT ADVISORS, LLC,<br><br>     Plaintiffs,<br><br>vs.<br><br>ARTHUR J. GALLAGHER & CO.; INDIAN HARBOR INSURANCE COMPANY; XL GROUP LTD.; XL CATLIN; XL INSURANCE AMERICA, INC.; XL REINSURANCE AMERICA, INC.; XL SPECIALTY INSURANCE COMPANY; XL AMERICA INC.; and PAIGE NABAVIAN,<br><br>     Defendants. | **SECOND AMENDED COMPLAINT**<br><br>Case No. 2:17-CV-00515<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Brooke C. Wells<br><br>JURY TRIAL DEMANDED |

Plaintiffs Allegis Investment Services, LLC and Allegis Investment Advisors, LLC bring

this Second Amended Complaint against Defendants Arthur J. Gallagher & Co. ("Gallagher"),

Paige Nabavian ("Nabavian"), Indian Harbor Insurance Company, XL Group, Ltd., XL Catlin,

XL Insurance America, Inc., XL Reinsurance America, Inc., XL Specialty Insurance Company,

and XL America Inc. (Indian Harbor Insurance Company, XL Group, Ltd., XL Catlin, XL

Insurance America, Inc., XL Reinsurance America, Inc., XL Specialty Insurance Company, and

XL America Inc. are individually and jointly referred to as "XL") stating as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Allegis Investment Services, LLC is a broker-dealer investment company, with its

principal place of business at 591 Park Avenue, Suite 101, Idaho Falls, Idaho 83404.  At the time

the insurance policy at issue was procured, Allegis Investment Services, LLC also had offices in

Salt Lake County, Utah.

2.      Allegis Investment Services, LLC is a two-member LLC, with its two members

being Heath S. Bowen, who resides in Bonneville County, Idaho and Chris Miller, who resides

in Davis County, Utah.

3.      Allegis Investment Advisors, LLC is a registered investment advisor company,

with principal place of business at 591 Park Avenue, Suite 101, Idaho Falls, Idaho 83404.  At the

time the insurance policy at issue was procured, Allegis Investment Advisors, LLC also had

offices in Salt Lake County, Utah.

4.      Allegis Investment Advisors, LLC is a single-member LLC, with its sole member

being Heath S. Bowen, who resides in Bonneville County, Idaho.

5.      Both Allegis Investment Services, LLC and Allegis Investment Advisors, LLC

(collectively "Allegis") are named insureds under the policy in question.

6.      The Allegis employee that participated in the submission of the forms and the

acquisition of the insurance policy at issue was located in the Allegis Salt Lake City, Utah office.

7.    The approval and execution of the insurance proposal at issue by Allegis occurred in the Salt Lake City, Utah office.

8.    Gallagher is an international insurance broker, with its principal place of business located at 2850 Golf Road, Rolling Meadows, Illinois 60008.

9.    Gallagher is registered with the Utah Division of Corporations to do business within the State of Utah.

10.    Gallagher has at least two local offices in Salt Lake County, Utah and one in Roosevelt, Utah.

11.    Nabavian is an individual, and, upon information and belief, is also an employee of Gallagher and resides in Irvine, California.

12.    Nabavian was the agent for Gallagher that contacted and solicited Allegis to utilize Gallagher as its insurance broker.

13.    XL is an insurer with its principal office located at 70 Seaview Ave., Stamford, Connecticut 06902.  XL is a licensed and registered insurer with the states of Idaho and Utah.

14.    XL has been licensed and registered with the Utah Department of Insurance since 1966, with the license to write various types of insurance products in the state of Utah.

15.    This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, because it involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16.    Venue is proper in this juridical district under 28 U.S.C. § 1391 because Gallagher is registered with the Utah Division of Corporations, has local offices in Salt Lake

County, and XL's registered agent in Utah is located in Salt Lake County and the insurance proposal was sent to and accepted in Salt Lake County, Utah.

## GENERAL ALLEGATIONS

17.    On or about January 6, 2015, Nabavian, on behalf of Gallagher, contacted Allegis, via Brian Pierce, in Salt Lake City, Utah, and solicited a renewal of Allegis's Professional Liability Insurance for Securities Broker-Dealers and Investment Advisors.

18.    Nabavian was the primary agent between Allegis and Gallagher, and the individual with whom Allegis worked and communicated to apply for and acquire the policy at issue.

19.    On February 2, 2015 Allegis submitted a completed renewal application to Gallagher to renew Allegis's E&O insurance policy with XL.  On the application, Allegis disclosed that 25% of its investment advisors' services were in options.

20.    With the application, as requested by XL, Allegis provided XL with a copy of its Form ADV Part 2A Brochure.  In that Brochure, Allegis detailed its use of options strategies, and option writing.  Gallagher reviewed the renewal application and sent it to XL.

21.    On or about February 23, 2015, in response to the application, Gallagher provided Allegis with a Proposal of Insurance.  That proposal itemized fifteen Endorsements/Exclusions. No exclusion relating to options was listed.

22.    On February 24, 2015, Allegis signed the Proposal of Insurance, selecting the only insurance plan proposed to it by Gallagher and authorizing Gallagher to bind coverage.

23.    Gallagher bound Allegis to an XL insurance policy, policy No. BDP9030770-01 for the policy period of March 3, 2015 to March 3, 2016 (the "Policy").

24.    Under the Policy, XL is to pay "all **Damages and Defense Expenses** in excess of the applicable deductible arising out of a **Claim** that [Allegis] first became aware of and reported to [XL] in writing during the **Policy Period** for a **Wrongful Act**, provided that such Wrongful Act was committed on or after the Retroactive Date and before the policy terminates." *See* Exhibit 1, Policy at page 1 at A (bolding in original).

25.    The Policy further provides that XL will "provide for the defense of **Claims** against [Allegis] seeking **Damages**."

26.    The Policy defines Claim to be "any demand received by [Allegis] for money, services or any other thing of value arising out of your acts, errors or omissions in providing **Professional Services**."

27.    The Policy states that the "insurance does not apply to any **Claim** or **Defense Expenses**.

>    4.    Arising out of the actual or alleged purchase, sale, attempted sale, solicitation or servicing of any of the following:
>    a.    Commodities, any type of futures contracts, any type of option contract or derivative.  However, this exclusion shall not apply to fully covered put or call options;"

28.    The Policy bolds defined terms and provides definitions of the defined terms.  The policy does not bold or define "fully covered put or call options."

29.    As disclosed on its application, 25 percent of Allegis' business then involved selling put options.

30.    At the time of its application, Allegis employed a strategy of simultaneously purchasing and selling put options for the same security at different strike prices.  Under this strategy, for every put option contract sold, Allegis purchased a corresponding put option

contract, thereby covering its position.  Allegis refers to this strategy of purchasing and selling

put options on the same security at different strike prices (thereby receiving premiums from the

sale for its investors) as a "net credit spread" strategy.

31.     On August 20, 2015, Allegis engaged in trades utilizing its "net credit spread"

strategy.

32.     The options were set to expire on Friday, August 21, 2015.

33.     On Friday, August 21, 2015, the market experienced an unforeseen correction,

which caused Allegis to sustain its first loss ever from its net credit spread strategy.

34.     Subsequently, several investors have alleged in arbitration *inter alia* that risks

were not properly disclosed by the investment advisor or that the trading used to implement the

net credit spread strategy was not a suitable investment for a particular investor.  Allegis has

contested these claims and affirmatively alleges that it followed correct procedures for qualifying

investors and disclosing risks.

35.     Some investors filed or threatened to file suits.

36.     On August 31, 2015, Brandon Stimpson, with Allegis Investment

Services/Advisors, at the direction of Allegis's compliance officer, Staci Compagno, notified

Denese Davis, Senior Program Administrator, at XL of a possible claim.  Ms. Davis told Mr.

Stimpson that Erin McGinn handles Brokers/Securities claims and directed him to send the

notice to "proclaimnewnotices@XLgroup.com with a copy to Erin McGinn:

erin.mcginn@XLcatlin.com."  Mr. Stimpson did so.

37.     On September 1, 2015, during the coverage period, Heath Bowen, on behalf of Allegis, timely notified XL, and Ms. McGinn, of the several claims and potential claims being made against Allegis.  In that notification, Allegis requested that XL provide a defense.

38.     On September 2, 2015, Ms. McGinn confirmed receipt of the notice.

39.     On September 11, 2015, Heath Bowen, on behalf of Allegis, contacted XL via Ms. McGill and provided her with an additional notification from a group of clients requesting that their concerns be forwarded to XL.

40.     Mr. Bowen asked Ms. McGill to help him understand how XL recommended Allegis should proceed.

41.     In response Ms. McGill told Mr. Bowen she "can review for coverage and if a defense is provided, [she could] assign an attorney for [Allegis]."

42.     Mr. Bowen responded that he needed to know how to proceed and that he wanted to be careful so he did not void coverage.

43.     On September 15, 2015, XL provided Allegis with a list of two law firms to choose from for defense of the claims made against Allegis, XL later provided a third option.

44.     When Allegis asked about being represented by a firm of its choosing, which was not on the list sent by XL, Allegis was told it would not consent to the firm, and there was not a process whereby the desired firm could become eligible.

45.     On September 21, 2015, XL informed Allegis it had received demands that required a response from an attorney as it appeared they qualified as Claims.  XL then inquired whether Allegis had been able to evaluate the three firms XL sent to Allegis for consideration.

XL informed Allegis that "[it] will appoint someone tomorrow so please let [XL] know if [Allegis] ha[s] a preference."

46.    Allegis informed XL, that of the firms XL provided, its preference was for Gordon Rees Scully Mansukhani, LLP ("Gordon Rees").

47.    On September 21, 2015, Ms. McGill, on behalf of XL sent a letter regarding one potential claim stating that the potential claim was not a claim that would trigger coverage, and XL would need to be notified of circumstances or facts which subsequently develop which would constitute a Claim.

48.    On September 23, 2015, XL emailed Allegis "confirm[ing] that XL has retained . . . Gordon Rees to defend the Insured's interests in this matter.  XL will pay Gordon Rees' legal fees . . . in excess of the $35,000 per Named Insured deductible."

49.    XL also received notices of claims from other investors.

50.    Allegis ensured it gave timely notice of every claim it became aware of to XL.

51.    Gordon Rees provided XL with regular status updates.  XL was consulted and signed off on litigation strategies and approaches and letters prepared and sent by Gordon Rees.

52.    On December 7, 2015, XL sent a letter to Allegis notifying Allegis of XL's determination that the claims "arise out of an options contract strategy" and therefore asserting that they were excluded from policy coverage.

53.    XL determined that all the claims relating to the loss on the net credit spread would be considered a single Claim.

54.    The various claims submitted stemmed from separate investors based on different agreements with, and/or different disclosures to, those investors.

55.    XL cited Section F. Exclusion 4.a. and notified Allegis, that is had determined that under the exclusion, no coverage was available under the policy, and refused to provide any coverage.

56.    Section F. Exclusion 4.a. expressly deals with commodities and therefore was an invalid basis for excluding coverage

## FIRST CAUSE OF ACTION
### (Breach of Contract – XL)

57.    Allegis incorporates by this reference all other allegations set forth herein.

58.    XL entered into an insurance contract with Allegis

59.    Allegis fulfilled its obligations under the contract, including paying the insurance premiums in a timely fashion and providing timely notice of claims.

60.    XL failed and refused to all pay for damages and defense expenses over the deductible arising out of a claim as it was contractually required.

61.    Allegis has had to pay the defense expenses.

62.    Allegis has potential liability for damages from the claims made against it which XL has refused to provide a defense for and refused to cover, and for which XL disclaims any liability.

63.    XL's actions constitute a material breach of the contract.

64.    XL's breaches are the direct and proximate cause of damages to Allegis in an amount that exceeds $75,000, which will be established at trial.

## SECOND CAUSE OF ACTION
### (Breach of Contract –Gallagher)

65.    Allegis incorporates by this reference all other allegations set forth herein.

66.    Allegis entered into an agreement with Gallagher for Gallagher to procure insurance for Allegis to cover its business risks.

67.    Gallagher procured insurance for Allegis through XL.

68.    Allegis fulfilled its obligations and paid the insurance premiums required under the policy acquired through Gallagher.  Allegis accurately completed the insurance application.

69.    Upon information and belief, Gallagher was compensated for Allegis's payment of its insurance premiums to XL.

70.    The insurance provided by XL, acquired for Allegis by Gallagher, purportedly did not cover the necessary, and clearly disclosed, business risks of Allegis.

71.    Accordingly, Gallagher breached its agreement with Allegis by at least the following ways: acquiring inappropriate and insufficient insurance for Allegis.

72.    Gallagher's breaches are the direct and proximate cause of damages to Allegis in an amount that exceeds $75,000, which will be established at trial.

**THIRD CAUSE OF ACTION**
**(Breach of the Implied Covenant of Good Faith and**
**Fair Dealing of Contract – XL and Gallagher)**

73.    Allegis incorporates by this reference all other allegations set forth herein.

74.    XL and Gallagher knew that Allegis engaged in trading options through a net credit spread trading strategy.

75.    XL and Gallagher knew that Allegis understood the insurance it contracted for would cover exposure under its net credit spread trading strategy.

76.    Until the claim was denied by XL, all parties acted under this common purpose and Allegis's justified expectations of coverage.

10

77.     By denying coverage for the claims based on the covered options in the net credit spread strategy, XL failed to act under the common purpose of the insurance.

78.     XL's and Gallagher's breaches were willful and malicious, or manifested a knowing and reckless indifference toward, and a disregard of, Allegis's rights.

79.     XL's and Gallagher's breaches are the direct and proximate cause of damages to Allegis in an amount that exceeds $75,000, which will be established at trial.

### FOURTH CAUSE OF ACTION
### (Negligence – Nabavian and Gallagher)

80.     Allegis incorporates by this reference all other allegations set forth herein.

81.     As the insurance broker for Allegis, Nabavian and Gallagher owed Allegis certain duties, including: the duty to advise it on the appropriate type of coverage, the duty to advise it on the proper amount of coverage, and the duty to see that any policy to which Allegis bound itself had the necessary coverage to protect Allegis's business risks.

82.     Nabavian and Gallagher breached their duties to Allegis in at least the following ways: failing to properly advise it on the type of coverage necessary to protect Allegis's potential risk, failing to advise Allegis on the amount of coverage necessary to protect Plaintiffs' potential business risks, and failing to see that the policy to which Allegis bound itself had the necessary coverage to protect Allegis's business risks.

83.     By and through the aforementioned acts and/or inaction, Nabavian and Gallagher breached the standard of care applicable to insurance brokers.

84.     The breach of these duties resulted in Allegis not being able to rely on the insurance coverage for which it engaged Nabavian and Gallagher to advise it on and acquire for it.

85. Nabavian and Gallagher's breaches are the direct and proximate cause of damages to Allegis in an amount that exceeds $75,000, which will be established at trial.

### FIFTH CAUSE OF ACTION
### (Breach of Fiduciary Duty – Nabavian and Gallagher)

86. Allegis incorporates by this reference all other allegations set forth herein.

87. As Allegis's insurance broker, Nabavian and Gallagher owed a fiduciary duty to Allegis.

88. Nabavian and Gallagher breached that fiduciary duty in at least the following ways: failing to properly advise Allegis on the type of coverage necessary to protect against its potential risk, failing to advise Allegis on the amount of coverage necessary to protect its potential risk, as well as by failing to see that the policy to which Allegis bound itself had the necessary coverage to protect Allegis's risk.

89. The breach of these duties resulted in Allegis not being able to rely on the insurance coverage for which it engaged Nabavian and Gallagher to purchase.

90. Nabavian and Gallagher's breaches are the direct and proximate cause of damages to Allegis in an amount that exceeds $75,000, which will be established at trial.

### SIXTH CAUSE OF ACTION
### (Misrepresentation – All Defendants)

91. Allegis incorporates by this reference all other allegations set forth herein.

92. XL, Gallagher, and Nabavian represented that the insurance purchased would protect Allegis from claims that it was likely subject to, including the type of claims for which XL has now denied coverage.

93.     XL, Gallagher, and Nabavian had a duty to disclose the extent of the coverage so that Allegis would understand that XL would not provide coverage for Allegis's covered option trading strategies.

94.     Neither XL, Gallagher, nor Nabavian ever disclosed that the coverage would not apply, nor even that it may not apply.

95.     XL, Gallagher, and Nabavian either knew that XL would not provide coverage for the net credit spread trading strategy which Allegis regularly engaged in, or failed to use reasonable care in failing to clarify this issue.

96.     XL, Gallagher, and Nabavian were in a better position than Allegis to know that XL would not allow coverage for the net credit spread strategy.

97.     XL, Gallagher, and Nabavian both financially gained by having Allegis purchase the insurance.

98.     Allegis relied on the forms provided to it by Gallagher and Nabavian, and the form provided to it from XL, both directly and through Gallagher and Nabavian and the representation made in connection with the application and purchase of the policy.

99.     From this reliance, Allegis understood its net credit trading strategy to be covered by the insurance.

100.    By relying on the forms and representations and of XL, Gallagher, and Nabavian, Allegis purchased the insurance policy and paid the premiums.

101.    XL's, Gallagher's, and Nabavian's misrepresentations were willful and malicious, or manifested a knowing and reckless indifference toward, and a disregard of, Allegis's rights.

102.    Allegis's reliance on these misrepresentations has directly and proximately caused damages to Allegis in an amount that exceeds $75,000, which will be established at trial.

## SEVENTH CAUSE OF ACTION
### (Bad Faith Denial of Claim – XL)

103.    Allegis incorporates by this reference all other allegations set forth herein.

104.    XL did not fairly evaluate Allegis's claims.

105.    Following the making of the claim, XL acted in a manner (in restricting counsel selection, refusing to consent to certain counsel, being involved in defense, etc.) that was not reasonable if XL were going to reject coverage.  Moreover, XL waited an unreasonable period of time to disclaim coverage.

106.    In restrictively interpreting the policy terms to exclude the net credit spread strategy, XL interfered with the insurance Allegis purchased.

107.    XL's contract terms and representations were not done so a layman could understand the coverage exclusions.  The language is unclear even to industry professionals.

108.    XL's denial was willful and malicious, or manifested a knowing and reckless indifference toward, and a disregard of, Allegis's rights.

109.    XL's bad faith denial directly proximately caused damages to Allegis in an amount that exceeds $75,000, which will be established at trial.

## EIGHTH CAUSE OF ACTION
### (Failure to Conduct a Reasonable and Full Investigation of the Claim – XL)

110.    Allegis incorporates by this reference all other allegations set forth herein.

111.    XL failed to properly investigate the claims.

112.    XL failed to reasonably understand the nature of the claims made on the policy.

113.    XL failed to investigate the claims to understand that the net credit spread trading strategy reasonably fell within the policy terms.

114.    XL's denial of claim failed to interpret policy ambiguities in favor of coverage.

115.    XL's failure to properly investigate the claim was willful and malicious, or manifested a knowing and reckless indifference toward, and a disregard of, Allegis's rights.

116.    By failing to investigate the claims in good faith and failing to construe ambiguities in favor of coverage, XL denied the claims, directly and proximately causing damage to Allegis in an amount that exceeds $75,000, which will be established at trial.

### NINTH CAUSE OF ACTION
### (Estoppel – XL)

117.    Allegis incorporates by this reference all other allegations set forth herein.

118.    XL and Gallagher misrepresented the coverage under the insurance contract, specifically, the exclusions therefrom, to Allegis before or at the inception of the contract.

119.    Allegis reasonably relied on those representations in purchasing the policy.

120.    Allegis retained counsel from the limited counsel options offered by XL.

121.    XL denied Allegis the ability to select counsel of its own choosing, and even denied Allegis's the opportunity to have its preferred counsel considered by XL.

122.    XL participated in and directed the responses and strategy for several of the claims.

123.    XL had Allegis's counsel report to XL and seek XL's approval.

124.    When it came time to pay the fees, however, XL disclaimed coverage.

125.    Because of the aforementioned misrepresentations and actions by XL and Gallagher, XL should be estopped claiming there was no coverage under the policy.

126.    XL's and Gallagher's actions, or inactions, were willful and malicious, or manifested a knowing and reckless indifference toward, and a disregard of, Allegis's rights.

127.    Allegis's reliance has directly and proximately caused damage to Allegis in an amount that exceeds $75,000, which will be established at trial.

## TENTH CAUSE OF ACTION
### (Declaratory Relief – XL)

128.    Allegis incorporates by this reference all other allegations set forth herein.

129.    XL entered into an insurance contract with Allegis.

130.    Allegis fulfilled its obligations under the contract, including paying the insurance premiums in a timely fashion and providing timely notice of claims.

131.    XL failed and refused to all pay for damages and defense expenses over the deductible arising out of a claim as it was contractually required.

132.    Allegis has had to pay the defense expenses.

133.    Allegis has potential liability for damages from the claims made against it which XL has refused to provide a defense for, refused to cover, and for which XL disclaims any liability.

134.    Allegis also has potential liability for damages from future claims which XL may refuse to provide a defense or cover, and for which XL may disclaim any liability for similar claims as those alleged herein.

135.    Allegis therefore seeks an Order declaring that the XL policy covers claims (those that have already been asserted or those that may yet be asserted) arising out of the net credit spread strategy during the policy's applicable coverage period.

## ELEVENTH CAUSE OF ACTION
### (Specific Performance - XL)

136.    Allegis incorporates by this reference all other allegations set forth herein.

137.    XL entered into an insurance contract with Allegis.

138.    Allegis fulfilled its obligations under the contract, including paying the insurance premiums in a timely fashion and providing timely notice of claims.

139.    XL failed and refused to all pay for damages and defense expenses over the deductible arising out of a claim as it was contractually required.

140.    Allegis has had to pay the defense expenses.

141.    Allegis has potential liability for damages from the claims made against it which XL has refused to provide a defense for, cover, and for which XL disclaims any liability.

142.    Allegis also has potential liability for damages from future claims that may be made against in, which XL may refuse to provide a defense or cover, and for which XL may disclaim any liability for similar claims as those alleged herein.

143.    Allegis therefore seeks an Order, requiring that the XL policy cover claims (those that have already been asserted or those that may yet be asserted) arising out of the net credit spread strategy during the policy's applicable coverage period.

## TWELFTH CAUSE OF ACTION
### (Punitive Damages – XL)

144.    Allegis incorporates by this reference all other allegations set forth herein.

145.    XL's actions were willfully done with malice, bad faith and intent to injure and manifest a knowing and reckless indifference toward and a disregard of the rights of Allegis.  As a result, Allegis is entitled to punitive damages.

WHEREFORE, Allegis respectfully requests the following relief:

(a)    That this Court declare that the claim for coverage asserted by Allegis pertaining to the "net credit spread" strategy is covered under the XL insurance policy;

(b)    An Order from this Court that XL is required to defend and cover claims made by Allegis pertaining to the "net credit spread" strategy;

(c)    That judgment be entered in favor of Allegis, against XL, Gallagher, and Nabavian for damages sustained by Allegis as set forth herein and established at trial;

(d)    That judgment be entered in favor of Allegis against XL for punitive damages;

(e)    That Allegis be awarded all of the costs and fees it has incurred in connection with this action; and

(f)    For such further relief as the Court may deem necessary or proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby request a trial by jury.

18

DATED this 5th day of July, 2017.

           WOOD BALMFORTH LLC


           Mary Anne Q. Wood
           Mary Anne Q. Wood
           Jared M. Asbury
           Douglas C. Smith
           60 East South Temple Street, Suite 500
           Salt Lake City, Utah 84111
           Telephone: (801) 366-6060
           mawood@woodbalmforth.com
           jmasbury@woodbalmforth.com
           dsmith@woodbalmforth.com
           *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of July, 2017, the foregoing **SECOND AMENDED**

**COMPLAINT** was electronically filed with the Clerk of the Court via the Court's CM/ECF

system, which shall send notification of electronic filing to the following counsel of record:

David S. Bridge
SCALLEY READING BATES HANSEN & RASMUSSEN, P.C.
15 West South Temple, Suite 600
Salt Lake City, Utah 84101
dbridge@scalleyreading.net
*Attorneys for Defendant XL Insurance America, Inc.*

Kristine M. Larsen
RAY QUINNEY & NEBEKER PC
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84111
*Attorneys for Arthur J. Gallagher & Co. and Paige Nabavian*

 /s/ Mary Anne Q. Wood
Mary Anne Q. Wood

**<u>APPENDIX OF EXHIBIT TO COMPLAINT</u>**

Exhibit 1        XL Insurance Policy, policy No. BDP9030770-01